1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Diane M. Doolittle (Bar No. 142046)
  dianedoolittle@quinnemanuel.com
  Margret M. Caruso (Bar No. 243473)
  margretcaruso@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

Attorneys for Plaintiffs Cruise LLC
and GM Cruise Holdings LLC

KIRKLAND & ELLIS LLP
  Dale Cendali (SBN 1969070)
  dale.cendali@kirkland.com
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

KIRKLAND & ELLIS LLP
  Diana Torres (Bar No. 162284)
  diana.torres@kirkland.com
2049 Century Park East, Suite 3700
Los Angeles, California 90067
Telephone:    (310) 552-4200

Attorneys for Plaintiff General Motors LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRUISE LLC, a Delaware limited liability company, GM CRUISE HOLDINGS LLC, a Delaware limited liability company, and GENERAL MOTORS LLC, a Delaware limited liability company,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>FORD MOTOR COMPANY, a Delaware corporation,<br><br>　　　　　Defendant. | CASE NO.  3:21-CV-05685<br><br>**COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION**<br><br>**JURY TRIAL DEMAND** |

1.    Plaintiffs Cruise LLC and GM Cruise Holdings LLC (collectively, "Cruise"), along with their affiliated company, General Motors LLC (GM), bring this lawsuit to protect their longstanding rights in the CRUISE, SUPER CRUISE, and CRUISE-formative trademarks.

2.    Cruise is a San Francisco-based company on the leading edge of the automated driving industry.  Since its founding in 2013, Cruise has devoted itself to building a brand that the public associates with safe, smart, and environmentally responsible vehicles with automated driving technology, with the Cruise name serving as the core of its branding.  GM uses the mark SUPER CRUISE in connection with its semi-autonomous automated driving technology, which has been available in Cadillac vehicles for several years.  Both companies have registered trademarks and multiple pending trademark applications for CRUISE or CRUISE-formative marks for related products and services. No other company has the right to use these marks (the "CRUISE Marks") in the field of automated driving technology.

3.    In April 2021, fully aware of Cruise's and GM's rights in the CRUISE Marks, Ford Motor Company ("Ford") announced that it would rebrand a new, unreleased enhancement to its existing Co-Pilot360 automated driving system as "BlueCruise."[1] Notably, less than one year ago, Ford had announced this same enhancement under the name "Active Drive Assist."[2] Rather than proceed with this technology as part of its existing Co-Pilot360 brand, however, Ford apparently wanted to distance itself from Co-Pilot out of concern that recent safety issues involving another user of the name "Pilot" in its brand would taint Ford's reputation.  So Ford chose "Cruise."

4.    Ford knew exactly what it was doing. If Ford wanted to adopt a new, unique, brand, it easily could have done so without using the word "Cruise," as shown by Ford's branding for the same automated driving technology in their luxury car models: Ford branded this same enhancement to its automated driving system in luxury models, such as the Lincoln, as the "ActiveGlide" feature.

---

[1] Ford Press Release, *Ford's 'Mother of All Road Trips' Tests BlueCruise Hands-Free Driving Ahead of Over-The-Air Push to F-150, Mustang Mach-E*, Apr. 14, 2021, https://media.ford.com/content/fordmedia/fna/us/en/news/2021/04/14/ford-mother-of-all-road-trips-bluecruise-hands-free-driving.html.

[2] Kyle Hyatt, *Ford brings hands-free driving to F-150 and Mach-E with Active Drive Assist*, ROAD SHOW BY CNET, Oct. 30, 2020, https://www.cnet.com/roadshow/news/ford-active-drive-assist-hands-free-driving-mach-e-f-150/.

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION

However, Ford insists on using BlueCruise for certain flagship models even though the feature itself shares the same technology and capabilities as "ActiveGlide."[3] Other automobile manufacturers have also formed new, unique brands for their automated driving technologies without using the word "Cruise." For example, Hyundai uses SmartSense, Honda uses Nextride, Lexus uses CoDrive, Toyota uses Guardian, and Waymo uses the Waymo Driver. Ford's decision to rebrand by using a core mark used by GM and Cruise will inevitably cause confusion between the parties, the affiliation, connection, or association between them, and/or the origin, sponsorship, or approval of their goods and services.

5.     Cruise and GM do not file this lawsuit lightly. They quickly took action after Ford's announcement to try to persuade Ford to rebrand its unreleased enhancement, but to no avail. The parties engaged in protracted discussions, but Ford insisted on moving forward with the "BlueCruise" name despite Cruise's preexisting rights. The parties had agreed to multiple standstill agreements while they negotiated.

6.     Because the negotiations were unsuccessful, Cruise and GM must act to protect their rights, prevent consumer deception, and seek relief before Ford commits any further resources to Ford's unlawful "BlueCruise" name. Plaintiffs filed this lawsuit the first day after the latest standstill agreement expired.

## THE PARTIES

7.     Plaintiffs Cruise LLC and GM Cruise Holdings LLC are Delaware limited liability companies both with their principal place of business at 333 Brannan Street, San Francisco, California 94107. Cruise LLC is a wholly-owned subsidiary of GM Cruise Holdings LLC, which has licensed all its CRUISE trademark registrations to Cruise LLC.

8.     Plaintiff General Motors LLC is a Delaware limited liability company with its principal

---

[3] B. Braga, *What is Lincoln ActiveGlide, and How Does It Work?* JD Power, Jun. 23, 2021 https://www.jdpower.com/cars/shopping-guides/what-is-lincoln-activeglide-and-how-does-it-work; The Lincoln Motor Co., *Lincoln Accelerates Brand Transformation; Plans To Deliver A Full Portfolio Of Connected And Electrified Vehicles By 2030,* Lincoln Media Center, Jun. 15, 2021, https://media.lincoln.com/content/lincolnmedia/lna/us/en/news/2021/06/16/lincoln-accelerates-brand-transformation.html; Ford, *Lincoln Accelerates Brand Transformation; Plans To Deliver A Full Portfolio Of Connected And Electrified Vehicles By 2030,* Ford website, Jun. 16, 2021, https://corporate.ford.com/articles/products/lincoln-accelerates-brand-transformation.html.

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION

place of business at 300 Renaissance Center, Detroit, Michigan 48265.

9.      Ford Motor Company ("Ford") is a Delaware corporation with its principal place of business at One American Road, Dearborn, Michigan 48126.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338(a) (act of Congress relating to trademarks).

11.     This Court has supplemental jurisdiction over Cruise and GM's state law claims pursuant to 28 U.S.C. §1367(a).

12.     This Court has personal jurisdiction over Ford because it has committed acts in this District that give rise to all claims of infringement, false designation of origin, and unfair competition asserted here and are likely to confuse residents of this District and cause injury here.  In addition, Ford has substantial, systematic, and continuous contacts with this District such that it may be considered to reside here.  Ford has regular and established places of business in the State of California and in this District, and conducts business with customers residing in this District.

13.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b), at least because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and because Ford has committed, and is likely to commit, acts of infringement, false designation of origin, and unfair competition in this District and has a regular and established place of business in this District.  In addition, venue is proper because Cruise's principal place of business is in this District and Cruise will suffer harm in this District.

## BACKGROUND

### The Technology

14.     Automated driving technology is a highly sophisticated technology that allows cars to perform operations without the intervention of a human being. Cars at various levels of automation use sensors and software to perform aspects of the task of driving, such as steering, changing lanes, accelerating, reacting to the speed of a leading car, and, in some cases, performing the entire driving task in a defined environment. The technology is still in development, and different levels and

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION

approaches are plainly apparent today.  Some companies are combining features such as lane-keeping and lane-changing into advanced driver assistance suites that will increasingly move toward fully autonomous driving.  Other companies are developing technologies that will not launch commercially until they are capable of fully autonomous driving in a defined environment.

15.     Importantly, automated driving is not cruise control.  Cruise control, which enables cars to maintain a speed set by the driver, or speed within a narrow range, has been available for decades.

### GM's Super Cruise®

16.     GM's Super Cruise® system is a semi-autonomous driving feature that allows for hands-free driving on over 200,000 miles of compatible divided highways.  GM began developing its automated semi-autonomous driving technology more than a decade ago.  Using real-time cameras, sensors and GPS, along with LiDAR precision map data, GM's proprietary semi-autonomous automated driving technology keeps the vehicle centered in the driving lane and at a safe distance from surrounding vehicles.  The technology automatically slows the vehicle down if it is heading into a corner at too high a speed and then resumes the set speed on exit.  Super Cruise® technology does all this without hands on the wheel or feet on the pedals.

17.     GM's Super Cruise® technology has been the subject of much positive publicity since even before it was launched.  As early as April 2012, GM began issuing press releases about its road-testing efforts for its new semi-autonomous Super Cruise® automated driving technology.  Through Spring and Summer 2012, many industry media outlets reported on GM's Super Cruise® technology, such as Car and Driver, Motor Authority, Mashable Tech, and Slash Gear.[4]  In October 2013, Popular Mechanics placed GM on its list of 10 Innovators Who Changed the World in 2013 because of its

---

[4] K.C. Colwell, *Cadillac's Super Cruise: Baby Steps Towards Autonomous Driving*, CAR AND DRIVER, Apr. 20, 2012, https://www.caranddriver.com/news/a18734229/cadillacs-super-cruise-baby-steps-towards-autonomous-driving/; John Voelcker, *Cadillac to offer hands-off Super Cruise self-driving system… 'very soon,'* June 13, 2020, MOTOR AUTHORITY, https://www.motorauthority.com/news/1076922_cadillac-to-offer-hands-off-supercruise-driving-very-soon; Mashable Video, *Cadillac Teases 'Super Cruise' Semi-Autonomous Car*, April 21, 2012, MASHABLE, https://mashable.com/2012/04/21/cadillac-super-cruise-car/; Chris Burns, *Cadillac "driverless" tests underway*, Apr. 20, 2012, SLASH GEAR, https://www.slashgear.com/cadillac-driverless-tests-underway-20223901/; last accessed June 24, 2021.

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION

Super Cruise® technology, for which GM's engineering team received a "Breakthrough Award."[5]

Called "one of the most advanced autonomous driver-assist features found on a production vehicle,"

GM's Super Cruise® semi-autonomous automated driving technology has been available on Cadillac

brand cars since 2017, with a significant expansion to 22 other GM brands rolling out this model year

and next.[6]

### The Origins of Cruise

18.    Cruise is a San Francisco-based company with more than 1,800 employees.  Its mission

is to build all-electric, zero-emission, automated vehicles that will help save lives, reimagine cities,

reduce carbon pollution, redefine time in transit, and restore freedom of movement for individuals.

19.    Cruise was founded in 2013 by Kyle Vogt to fulfill his lifelong dream of making cars

that could drive themselves.  In 2004, Kyle competed in the DARPA Grand Challenge, a first of its

kind race through the desert to foster the development of automated vehicles.  Since that time, Kyle

has become a pioneer in the automated vehicle industry.

20.    By March 2014, Cruise built its first physical implementation towards a fully

automated vehicle when it developed an automated driving system to fit in a car and test drove it on

the highway.  After presenting the demo at Y Combinator, a seed funding provider for startups, Cruise

became Y Combinator's first incubation in the hardware industry.  By December 2015, Cruise was

testing automated driving systems in complex environments.

21.    In May 2016, a subsidiary of General Motors Company acquired Cruise based on the

progress the Cruise team had made in developing automated driving technology.  The acquisition

made Cruise the only automated vehicle company with the ability to manufacture and produce fully

integrated cars at global scale. In June 2018, after attracting outside investors, Cruise transitioned to a

---

[5] Logan Ward, *10 Innovators Who Changed the World in 2013*, POPULAR MECHANICS, Oct. 11, 2013, at slide 3, https://www.popularmechanics.com/technology/g1315/10-innovators-who-changed-the-world-in-2013/slide-3.

[6] Viknesh Vijayenthiran, *GM's 'Hyper Cruise' trademark filing hints at fully autonomous driver-assist feature*, MOTOR AUTHORITY, Jan. 20, 2021, https://www.motorauthority.com/news/1130997_gm-s-hyper-cruise-trademark-filing-hints-at-fully-autonomous-driver-assist-feature#:~:text=General%20Motors'%20Super%20Cruise%20is,the%20next%20stage%20in%20capability.

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION

majority-owned subsidiary of General Motors Company, and remains so today.

22.    Cruise has a fleet of automated vehicles based on GM's Chevrolet Bolt platform and tests around the clock on public roads in San Francisco.[7]  Those vehicles navigate some of the most complex and unpredictable driving environments in the United States.  Cruise vehicles encounter construction, cyclists, pedestrians, and six-way intersections over 40 times more frequently in San Francisco than they would in suburban environments.  The Cruise vehicles continue to undergo safety testing and validation in preparation for scaled deployment.

**The Cruise Brand**

23.    With the backing of GM, Cruise has expended significant resources developing the Cruise brand and associating it with best-in-class safety and technology.  Both GM and Cruise believe this is essential for the future of automated driving and the success of Cruise's business.  The automated car industry is relatively new, and the public is only now becoming aware of the participants in the field.  Many people are still uncertain about the industry and the safety of automated vehicles.  Accordingly, from the beginning, Cruise has prioritized safety in its technology, business development plans, and branding.  Senior leadership and cross-functional teams collaborate on vehicle safety research and validation at all engineering development stages.  In addition to the billions of dollars Cruise has invested in its automated driving technology and corresponding safety initiatives, Cruise has devoted many millions of dollars to develop goodwill among the public and exhibit its firm commitment to develop automated vehicles that are safe and reliable.

24.    In 2020 alone, for example, Cruise drove almost 1,000,000 miles as part of Cruise's effort to develop safe automated vehicles.  The CRUISE mark is displayed prominently on the fleet of 140 autonomous vehicles that  navigate Phoenix and San Francisco every day:

---

[7] Cruise, *Going driverless in San Francisco*, available at
https://www.youtube.com/channel/UCP1rvCYiruh4SDHyPqcxlJw (last accessed July 6, 2021).

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION



25.    Cruise's goodwill is also crucial for its ability to attract talented employees in the field. Since 2013, Cruise has hired thousands of individuals to help it achieve its ambitious goals and continue to make Cruise a distinctive and well-respected name in the industry.

26.    Cruise has focused not only on developing automated driving goods and services, but also on using its technology for charity and community service projects Cruise has spearheaded.  For example, throughout the COVID-19 pandemic and related shelter-in-place orders, Cruise has devoted vehicles from its fleet to deliver food for two Bay Area food banks.  To date, Cruise has delivered over 1,000,000 meals to San Francisco residents in need.  Building on this work, Cruise recently launched the "Cruise for Good" campaign with an ongoing commitment to devote at least 1% of its vehicle fleet to serving communities wherever Cruise is operating, partnering with local nonprofits and community organizations to help those most in need.

27.    The CRUISE mark is also used in connection with the Cruise Origin, Cruise's new automated vehicle built from the ground up.  On January 21, 2020, Cruise publicly unveiled the Cruise Origin in front of a packed and excited crowd at its "Moving Beyond the Car" event in San Francisco:

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN;
COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION



28.     Cruise has received a substantial amount of positive publicity for its work and leadership in the industry.  For example, USA Today ran a story on November 5, 2018, highlighting how Kyle Vogt and Cruise "sped to the front of the autonomous car pack" through their latest work testing Cruise-branded cars on the streets of Phoenix and San Francisco.[8]



Kyle Vogt, founder of self-driving car company Cruise, which is owned by General Motors, stands in his company's San Francisco garage, home to some 180 Cruise autonomous cars currently testing throughout the city. *Marco Della Cava, USA TODAY*

29.     A Reuters article on October 15, 2020, highlighted the trust that Cruise has earned from local and state agencies, noting that in "[t]he race for driverless autonomous vehicles . . . Cruise became the first to receive a permit to test cars without anyone in them on the streets of

---

[8] Marco della Cava, *GM, Honda are betting Cruise founder Kyle Vogt can lead the autonomous car pack*, USA Today, Nov. 5, 2018, https://www.usatoday.com/story/money/2018/11/05/gm-honda-cruise-founder-kyle-vogt/1819138002/.

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION

1    San Francisco . .”[9]

2    Recent Milestones In Autonomous Vehicle Technology

January 2021

December 2020

October 2020







**Collaborating with Microsoft**

Cruise and GM team up with Microsoft to accelerate the commercialization of self-driving vehicles.

**Testing With Zero Drivers**

Cruise began operating its self-driving test vehicles on the streets of San Francisco without a driver behind the wheel.

**Factory ZERO Announced**

GM reimagines existing assembly plant to create Factory ZERO, solely dedicated to electric vehicles and autonomous vehicles.

30.    An April 22, 2020 article in The Verge highlighted Cruise's commitment to clean energy, noting that Cruise is not only "one of the few autonomous vehicle companies to use only electric cars in its fleet [but] is going a step further by committing to using only '100 percent renewable energy' to power its EVs."[10]

31.    GM is proud of its association with Cruise and of their collective efforts to help build a more sustainable and accessible world through the development of safe, automated, electric transportation. Indeed, GM publicly touts Cruise milestones, such as its acquisition of Cruise and the 2020 reveal of the Cruise Origin vehicle.

32.    On January 19, 2021, Cruise, GM, and Microsoft announced they were partnering to accelerate the commercialization of automated vehicles:  "The companies will bring together their software and hardware engineering excellence, cloud computing capabilities, manufacturing know-how and partner ecosystem to transform transportation to create a safer, cleaner, and more accessible world for everyone."[11]

---

[9] Jane Lanhee Lee, *Driverless race steps up with Cruise allowed to drive empty in San Francisco*, REUTERS, Oct. 15, 2020, https://www.reuters.com/article/autonomous-cruise-san-francisco/driverless-race-steps-up-with-cruise-allowed-to-drive-empty-in-san-francisco-idUSL1N2H0012.

[10] Andrew Hawkins, *Cruise commits to using '100 percent renewable energy' to power its self-driving taxis*, THE VERGE, Apr. 22, 2020, https://www.theverge.com/2020/4/22/21231168/cruise-gm-av-ev-renewable-energy-solar-taxis.

[11] Press Release, *Cruise and GM team up with Microsoft to commercialize self-driving vehicles*, news.microsoft.com, Jan. 19, 2021, https://news.microsoft.com/2021/01/19/CRUISE-AND-GM-

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN;
COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION

33. The announcement was quickly picked up in the news, including a Breaking News report on CNBC with the headline "Microsoft Invests in Cruise."[12]



34. Forbes similarly reported on another partnership, calling Cruise one of "the leading developers of autonomous ride services, vying with Alphabet's Waymo and Amazon's Zoox in the robotaxi space."[13]

35. On June 4, 2021, Cruise became the first company to obtain a permit for passenger transport in a driverless autonomous vehicle, issued by the California Public Utilities Commission. As TechCrunch noted, "This permit is important — and Cruise is the first to land this particular one [...] Driverless testing permits, in which a human operator is not behind the wheel, have become the new milestone and a required step for companies that want to launch a commercial robotaxi or delivery service in the state."[14]

TEAM-UP-WITH-MICROSOFT-TO-COMMERCIALIZE-SELF-DRIVING-VEHICLES/; *see also* https://www.getcruise.com/news/cruise-and-gm-team-up-with-microsoft-to-commercialize-self-driving-vehicles (same).

[12] Michael Wayland, *Microsoft is investing and partnering with GM's Cruise on self-driving cars*, CNBC, Jan. 19, 2021, https://www.cnbc.com/2021/01/19/microsoft-invests-partners-with-gms-cruise-on-self-driving-cars.html; *see also* Sanjana Shivdas, Paul Lienert, *Cruise, GM partner with Microsoft to ramp up self-driving vehicles*, REUTERS, Jan. 19, 2021, https://www.reuters.com/article/us-gm-microsoft-autonomous/cruise-gm-partner-with-microsoft-to-ramp-up-self-driving-vehicles-idUSKBN29O1MO.

[13] Alan Ohnsman, "Robotaxis From GM-Backed Cruise Are Heading To Dubai," FORBES, April 12, 2021, https://www.forbes.com/sites/alanohnsman/2021/04/12/robotaxis-from-gm-backed-cruise-are-heading-to-dubai/?sh=5edb81926716.

[14] Kirsten Korosec, "Cruise can now give passengers rides in driverless cars in California," TECHCRUNCH, June 4, 2021, https://techcrunch.com/2021/06/04/cruise-can-now-give-passengers-rides-in-driverless-cars-in-california/.

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION

**GM and Cruise's CRUISE-Formative Marks**

36.     Together, GM and Cruise have developed a family of marks based on CRUISE in connection with automated driving technologies.

37.     Among its intellectual property rights, Cruise owns Federal Trademark Registration No. 6,008,158 for CRUISE (the "CRUISE Registration").  The CRUISE Registration was filed on April 22, 2016, and registered on the principal register on March 10, 2020.  General Motors LLC was the original applicant of the mark and assigned its entire interest to GM Cruise Holdings LLC on February 4, 2020.  Cruise owns Federal Trademark Registration No. 6412962 for CRUISE FOR GOOD in connection with charitable services, namely, transportation and delivery services by road. The CRUISE FOR GOOD Registration issued on July 06, 2021.

38.     Cruise also owns Federal Trademark Application No. 88430266 for CRUISE (the "CRUISE Application") in connection with a host of additional goods and services, including autonomous land vehicles, computer software for automated driving, LiDAR, laser object detectors on vehicles, vehicle sensors, safety and driving assistant systems comprised of sensors for determining position, velocity, direction, and acceleration of land vehicles, navigational instruments for vehicles, vehicle detection equipment in the nature of monitoring devices for vehicles, passenger transport, ride sharing, package delivery, and more.  The PTO issued a notice of allowance on January 19, 2021.

39.     Cruise also owns federal trademark applications for additional marks in the CRUISE family, including:

        a.      CRUISE AV (Application 88783423 was filed February 3, 2020, and the PTO issued a notice of allowance on July 28, 2020),

        b.      CRUISE FUTUREWORKS (Application 88830166 was filed March 11, 2020, and the PTO issued a notice of allowance on July 21, 2020), and

        c.      CRUISE ORIGIN (Application 88789217 was filed February 7, 2020, and the PTO issued a notice of allowance on August 4, 2020).

40.     GM owns Federal Trademark Registration No. 5387518 for SUPER CRUISE, which lists computer software, cameras, ultrasonic sensors, global positioning systems, and radar object detectors for the semi-autonomous driving of motor vehicles.  The SUPER CRUISE Registration was

filed on June 20, 2016, and registered on the principal register on January 23, 2018.

41.     GM owns Federal Trademark Application No. 88331376 for SUPER CRUISE in connection with electronic speed and steering control systems for facilitating the semi-autonomous driving of a motor land vehicle.  The application was filed on March 8, 2019, and was published on December 31, 2019.

42.     GM owns Federal Trademark Application No. 88125202 for ULTRA CRUISE in connection with computer software and hardware used for the semi-autonomous driving of motor vehicles, including cameras, ultrasonic sensors, global positioning systems, and radar object detectors. The application was filed on September 20, 2018, and the PTO issued a notice of allowance on August 6, 2019.

43.     GM owns Federal Trademark Application No. 88803548 for DYNACRUISE in connection with recorded vehicle integration software, including software to process voice commands, enable hands-free use of a mobile phone, and enable communication between vehicles and connected devices.  The application was filed February 20, 2020, and the PTO issued a notice of allowance on February 9, 2021.

44.     GM owns Federal Trademark Application No. 90463840 for HYPER CRUISE in connection with electronic speed and steering control systems for facilitating the autonomous driving of a motor land vehicle.  The application was filed on January 13, 2021.

45.     In addition to these registrations and applications, Cruise has strong common law rights in the CRUISE mark, which it has used consistently for several years. GM, similarly, has strong common law rights in the SUPER CRUISE mark, which it has used consistently for several years.

**Ford's Willful Infringement and Unfair Competition**

46.     Ford has no rights in any CRUISE-formative mark.

47.     Nor has Ford demonstrated the same leadership in automated driving technology as its rival GM has, and it has nothing close to the technology developed by Cruise.

48.     On April 14, 2021, Ford announced that it "will begin offering its new BlueCruise hands-free highway driving system to customers" later this year.  Describing that technology as an "evolution of Ford Co-Pilot360 Technology," Ford announced that the BlueCruise system will be

made available through "over-the-air software updates" for certain models "equipped with the available Ford Co-Pilot360™ Active 2.0 Prep Package," that "[t]he feature allows a driver to operate truly hands-free on prequalified sections of divided highways called Hands-Free Blue Zones" that are in the "Ford GPS mapping system," and that it is "targeting to sell more than 100,000 vehicles equipped with BlueCruise in the first year." [15]

49.     Ford's sudden rebranding has not been lost on the automotive and tech media.  As Motor Trend commented, "Ford's forthcoming Level 2 hands-free driver assist system is abandoning the Active Drive Assist moniker in favor of something with a little more flair.  Meet BlueCruise, the Blue Oval's answer to similar Level 2 setups from the likes of Tesla (Autopilot) and General Motors (Super Cruise)."[16] Ars Technica similarly compared Ford's "BlueCruise" technology to "General Motors' highly rated Super Cruise system," noting that it was "[o]riginally known as Active Drive Assist, [and] renamed BlueCruise."[17] Motor1.com commented on "Ford's curiously named BlueCruise" in comparing it to Tesla's Autopilot and GM's Super Cruise.[18]  While Ford may have a story to tell about why it chose to change the name of its technology to one that includes "Cruise," that story in this context will ring hollow.  Indeed, Ford may contend it chose the word "Cruise" to create an association with safety, but *the association between "Cruise" and safety has been built by Cruise and GM*.

50.     Moreover, early press reports suggest that Ford's system is less advanced than other automated driving systems currently available, such as Super Cruise.  While it remains to be seen exactly how sophisticated (or not) Ford's unreleased technology actually is, by Ford's own description,

---

[15] Ford Press Release, *Ford's 'Mother of All Road Trips' Tests BlueCruise Hands-Free Driving Ahead of Over-The-Air Push to F-150, Mustang Mach-E*, April 14, 2021, https://media.ford.com/content/fordmedia/fna/us/en/news/2021/04/14/ford-mother-of-all-road-trips-bluecruise-hands-free-driving.html.

[16] Greg Fink, *Ford's BlueCruise Has Autopilot and Super Cruise in Its Crosshairs*, MOTOR TREND, April 14, 2021, https://www.motortrend.com/news/ford-bluecruise-level-2-driver-assist/.

[17] Jonathan M. Gitlin, *Ford's hands-free answer to GM's Super Cruise is called BlueCruise*, ARS TECHNICA, April 14, 2021, https://arstechnica.com/cars/2021/04/ford-will-roll-out-bluecruise-hands-free-driving-software-in-q3-2021/.

[18] Christopher Smith, *Autopilot Vs Super Cruise Vs BlueCruise: How Do They Compare?* MOTOR1, April 20, 2021, https://www.motor1.com/news/501075/autopilot-super-cruise-bluecruise-comparison/.

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION

"BlueCruise" is far less advanced than Cruise's technology and thus likely to yield an inferior consumer experience, with the potential for comfort and safety issues.  Any negative association created by Ford's "BlueCruise" would irreparably damage Cruise and GM's hard-earned reputations and goodwill.

51.     On information and belief, Ford intends to deliver its BlueCruise software and vehicles equipped with that software to people who live and drive in this District, as well as elsewhere around the country.

52.     Ford does not have the permission or consent of Cruise or GM to use "BlueCruise," and Ford has no corporate relationship, affiliation, or sponsorship with Cruise or GM.

53.     Ford's use of "BlueCruise" in connection with computer software for automated driving in motor vehicles is likely to cause confusion, mistake, or to deceive, as to the affiliation, connection, or association between Ford and both GM and Cruise and/or the origin, sponsorship, or approval of the parties' goods and services.  Ford's use will harm GM and Cruise, which have no power to monitor or affect the quality, safety, or marketing of "BlueCruise."

54.     Cruise and GM sought to resolve this issue without litigation, to no avail. Ford insisted that it will move forward with the "BlueCruise" name, despite being in a position to change the name of its as-yet unreleased software before it has even begun to market it on a broad scale, including by keeping or modifying its existing name, and despite certain confusion as the parties grow their respective businesses using their confusingly similar marks.

## **FIRST CLAIM FOR RELIEF**

### **(Federal Trademark Infringement)**

### **(15 U.S.C. § 1114)**

55.     Cruise and GM incorporate and reallege paragraphs 1 through 54 of this Complaint.

56.     Cruise owns Federal Trademark Registration No. 6008158 for the word CRUISE, which was filed on April 22, 2016, and registered on the principal register on March 10, 2020.

57.     Cruise, with GM's support, has invested substantial resources in developing goodwill in connection with the CRUISE Registration, including tens of millions of dollars on marketing and branding efforts, continuously using the mark in association with publicly testing vehicles for several

million miles, and announcing the Cruise Origin automated vehicle and associated plans to use that vehicle in cities around the world.

58.     GM owns Federal Trademark Registration No. 5387518 for SUPER CRUISE, which was filed on June 20, 2016, and registered on the principal register on January 23, 2018.  While automated driving technology is relatively new, GM has been at the forefront of its development, and its SUPER CRUISE technology is well known and unrivaled among the major (and not-so-major) automobile manufacturers.  Indeed, the tech and automotive industry press alike have lauded GM's Super Cruise technology, comparing it favorably time and again to that of others.[19]  In other words, GM's SUPER CRUISE mark is strong, and the technology for which it is used is very highly regarded.

59.     Ford's use of "BlueCruise" in connection with a "hands-free highway driving system" is confusingly similar to the CRUISE family of marks developed and used by Cruise and GM—and a brazen attempt to trade on their goodwill.

60.     Ford does not have the consent or permission of Cruise or GM to use "BlueCruise." Ford's use of "BlueCruise" in connection with computer software for hands-free driving assistance in motor vehicles is likely to cause confusion and a mistaken belief that Cruise and Ford are related and/or that Ford's technology is related to or comes from the same source as Cruise's and GM's.  This is likely to harm Cruise and GM, which have no ability to monitor or affect the quality, safety, or marketing of Ford's "BlueCruise."

61.     Prior to Ford's first use of "BlueCruise," it was aware of both GM's Super Cruise® technology and of Cruise's business and the CRUISE brand, and had either actual notice and knowledge, or constructive notice, of Cruise and GM's trademark registrations and applications.

62.     Cruise and GM are informed and believe, and on that basis allege, that Ford's infringement of their registered trademarks as described herein has been and continues to be intentional, willful, and without regard to Cruise and GM's rights.

---

[19] Scott Evans, Cadillac Super Cruise Review: Better Than Tesla's Autopilot," MOTOR TREND, February 9, 2021, available at https://www.motortrend.com/cars/cadillac/escalade/2021/cadillac-super-cruise-is-as-good-or-better-than-tesla-autopilot/; Michael Wayland, "Tesla's Autopilot a 'distant second' to GM's Super Cruise system in Consumer Reports testing, CNBC, October 28, 2020, available at https://www.cnbc.com/2020/10/28/gms-super-cruise-tops-teslas-autopilot-in-consumer-reports-testing.html, last accessed June 24, 2021.

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION

63.     As a direct and proximate result of these acts by Ford, Cruise and GM are likely to be damaged and suffer damages in an amount to be proved at trial.

64.     Ford has refused to cease its infringing conduct, and on information and belief, it will continue unless enjoined.  Without immediate injunctive relief, Ford's use is likely to cause irreparable harm to Cruise, GM, and their related CRUISE and Super Cruise® brands.  Cruise and GM have no adequate remedy at law to compensate them for the loss of business reputation, customers, market position, and goodwill, and confusion likely to flow from Ford's infringing activities.  Cruise and GM are entitled to an injunction against Ford's continuing infringement as well as enhanced damages.

### SECOND CLAIM FOR RELIEF

### (Unfair Competition, False Endorsement, and False Designation of Origin)

### (15 U.S.C. § 1125)

65.     Cruise and GM incorporate and reallege paragraphs 1 through 54 of this Complaint.

66.     Cruise and GM own the CRUISE and SUPER CRUISE marks, respectively, which they use in connection with automated driving technology, products, and services.  In addition to their registered marks, Cruise and GM have strong, valid common law rights in CRUISE and SUPER CRUISE through their consistent, nationwide uses of those marks in connection with automated driving technology since long before Ford decided to rebrand its still unreleased "Active Drive Assist" technology as "BlueCruise."

67.     Ford's use of "BlueCruise" in connection with computer software for hands-free driving assistance in motor vehicles infringes Cruise and GM's common law rights, and is likely to cause confusion and a mistaken belief as to the affiliation, connection, or association between Ford and both Cruise and GM, and/or the origin, sponsorship, or approval of the parties' goods and services.

68.     Cruise and GM are informed and believe, and on that basis allege, that Ford's infringement of their trademark rights and its attempt to create confusion as to source, affiliation, and sponsorship as described herein have been and continue to be intentional, willful, and without regard to Cruise and GM's rights.

69.     As a direct and proximate result of these acts by Ford, Cruise and GM are likely to suffer damages in an amount to be proved at trial.

70.     Ford has refused to cease its infringing conduct, and on information and belief, it will continue unless enjoined.  Without immediate injunctive relief, Ford's use is likely to cause irreparable harm to Cruise, GM, and their related CRUISE and Super Cruise® brands.  Cruise and GM have no adequate remedy at law to compensate them for the loss of business reputation, customers, market position, and goodwill, and confusion likely to flow from Ford's infringing activities.  Cruise and GM are entitled to an injunction against Ford's continuing infringement of the CRUISE mark as well as enhanced damages.

## THIRD CLAIM FOR RELIEF

### (Common Law Trademark Infringement)

71.     Cruise and GM incorporate and reallege paragraphs 1 through 54 of this Complaint.

72.     Cruise and GM have prior, protectable rights in the CRUISE and SUPER CRUISE marks, respectively.

73.     Ford has infringed Cruise and GM's trademark rights by using the "BlueCruise" name for its self-driving software and system.

74.     Ford's use of "BlueCruise" in connection with computer software for hands-free driving assistance in motor vehicles is likely to cause confusion and a mistaken belief as to the affiliation, connection, or association between Ford and both Cruise and GM, and/or the origin, sponsorship, or approval of the parties' goods and services.

75.     Cruise and GM are informed and believe, and on that basis allege, that Ford's infringement of their trademark rights as described herein has been and continues to be intentional, willful, and without regard to Cruise and GM's rights.

76.     As a direct and proximate result of these acts by Ford, Cruise and GM are likely to suffer damages in an amount to be proved at trial.

77.     Ford has refused to cease its infringing conduct, and on information and belief, it will continue unless enjoined.  Without immediate injunctive relief, Ford's use is likely to cause irreparable harm to Cruise, GM, and their related CRUISE and Super Cruise® brands.  Cruise and GM have no adequate remedy at law to compensate for the loss of business reputation, customers, market position, and goodwill, and confusion likely to flow from Ford's infringing activities.  Cruise and GM are

entitled to an injunction against Ford's continuing infringement as well as punitive damages.

## FOURTH CLAIM FOR RELIEF

### (Unfair Competition)

### (California Business and Professions Code § 17200, *et seq*.)

78.     Cruise and GM incorporate and reallege paragraphs 1 through 54 of this Complaint.

79.     Cruise has protectable rights in the CRUISE mark that are prior to those of Ford.

80.     GM has protectable rights in the SUPER CRUISE mark that are prior to those of Ford.

81.     No other company has the right to use CRUISE or any CRUISE-formative mark in the field of automated driving technology.

82.     Ford has infringed Cruise and GM's trademark rights by using the "BlueCruise" name for its automated driving software and system.

83.     Ford's use of "BlueCruise" in connection with computer software for hands-free driving assistance in motor vehicles is likely to cause confusion, mistake, or to deceive, as to the affiliation, connection, or association between Ford and both Cruise and GM, and/or the origin, sponsorship, or approval of the parties' goods and services.

84.     These acts by Ford are unlawful.

85.     Cruise and GM are informed and believe, and on that basis allege, that Ford's infringement of their trademark rights and Ford's efforts to create confusion as to source, affiliation, and sponsorship as described herein have been and continue to be intentional, willful, and without regard to Cruise's rights.

86.     As a direct and proximate result of these acts by Ford, Cruise and GM are likely to suffer damages in an amount to be proved at trial.

87.     Ford has refused to cease its unfair conduct, and on information and belief, it will continue unless enjoined.  Without immediate injunctive relief, Ford's use is likely to cause irreparable harm to Cruise, GM and their related CRUISE and Super Cruise® brands.  Cruise and GM have no adequate remedy at law to compensate for the loss of business reputation, customers, market position, and goodwill, and confusion likely to flow from Ford's unlawful activities.  Cruise and GM are entitled to an injunction against Ford's continuing unfair use of the CRUISE mark.

88.     Ford should be required to restore to Cruise and GM any and all profits it earns as a result of its unlawful actions, or provide Cruise and GM with any other restitutionary relief that the Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Cruise and GM pray for relief, as follows:

A.      A judgment that Ford:

     (i)      has infringed Cruise's and GM's federal and common law trademark rights;

     (ii)     is unfairly competing with Cruise and GM, and has been unjustly enriched;

     (iii)    has acted willfully and with malice, oppression, and/or fraud;

B.      An order and judgment preliminarily and permanently enjoining Ford and all of its affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or in active concert or participation with any of them, from further acts of infringement and unfair competition;

C.      Actual damages suffered as a result of Ford's unlawful conduct, in an amount to be proved at trial, as well as all pre-judgment and post-judgment interest, at the maximum rate permitted law;

D.      Reasonable funds for future corrective advertising;

E.      An accounting of Ford's profits;

F.      A judgment trebling any damages award;

G.      Punitive damages;

H.      Restitutionary relief against Ford and in favor of Cruise and GM, including disgorgement of any wrongfully obtained profits and any other appropriate relief;

I.      Costs of suit and reasonable attorneys' fees and

J.      Any other remedy to which Cruise and GM may be entitled in law or equity.

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN;
COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION

DATED:  July 23, 2021                QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP


                                     By  /s/ Margret M. Caruso
                                         Diane M. Doolittle
                                         Margret M. Caruso
                                         Attorneys for Plaintiffs Cruise LLC and GM
                                         Cruise Holdings LLC


DATED:  July 23, 2021                KIRKLAND & ELLIS LLP


                                     By /s/ Dale Cendali
                                        Dale Cendali
                                        Diana Torres
                                        Attorneys for Plaintiff General Motors LLC

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN;
COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION

1

## **DEMAND FOR JURY TRIAL**

2    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Cruise respectfully demands a

3 trial by jury on all issues triable by jury.

4

5 DATED:  July 23, 2021      QUINN EMANUEL URQUHART &
6                        SULLIVAN, LLP

7

8               By *_/s/ Margret M. Caruso_*

9                 Diane M. Doolittle
                  Margret M. Caruso
10                Attorneys for Plaintiffs Cruise LLC and GM
                  Cruise Holdings LLC
11

12 DATED:  July 23, 2021      KIRKLAND & ELLIS LLP

13

14               By *_/s/ Dale Cendali_*

15                 Dale Cendali
                 Diana Torres
16                Attorneys for Plaintiff General Motors LLC

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN;
COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION

1

## **ATTESTATION**

2

     I, Dale Cendali, am the ECF user whose ID and password are being used to file the above

3

document.  In compliance with Local Rule 5-4, I hereby attest that Diane Doolittle and Margret

4

Caruso have concurred in the filing of the above document.

5

6

                                         */s/ Dale Cendali*

7

                                         Dale Cendali

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN;
COMMON LAW TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION